IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

VIRGINIA ELECTRIC AND POWER  )
COMPANY                       )
                              )
      Plaintiff,              )
                              )
         v.                   )
                              )   1:09cv1149 (JCC)
COMCAST OF VIRGINIA, INC.,    )
et al.,                       )
                              )
      Defendants.             )

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants Comcast of Virginia, Inc., Comcast Phone of Virginia, LLC., Comcast Phone of Northern Virginia, Inc., Comcast IP Phone, LLC., Comcast IP Phone II, LLC., and Comcast Business Communications of Virginia, LLC.'s (collectively, "Defendants'" or "Comcast's ") Motion to Dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, Motion to Stay Proceedings.  (Dkt. 9.)  Plaintiff Virginia Electric and Power Company's ("Plaintiff's" or "Dominion's") Complaint ("Complaint") asserts jurisdiction under 28 U.S.C. § 1331 for two counts of its Complaint by claiming a private right of action exists for alleged violations of the

1

Pole Attachment Act (47 U.S.C. § 224 *et seq*) and the accompanying regulations.  It also asserts supplemental jurisdiction under 28 U.S.C. § 1367 for its three remaining state law claims.  For the following reasons, the Court will grant Defendants' Motion to Dismiss.

## I. Background

This case arises out of disputed rent payments relating to Defendants' use of Plaintiff's network of electricity distribution poles ("poles") on which Defendants installed, maintained and used pole attachments to provide certain services in the Commonwealth of Virginia.  For the right to place attachments on its poles, Plaintiff charges various agreed upon fees.  The Complaint, as filed, contains the following five claims: (1) violation of 47 U.S.C. § 206 and 47 C.F.R. § 1.1403; (2) breach of contract; (3) violation of 47 U.S.C. § 206 and 224(e); (4) trespass; and, (5) implied contract and unjust enrichment.  At its core, the Complaint alleges that Comcast has been providing "telecommunications services" by and through its attachments to Virginia Electric's poles without proper notification or proper payment.

As an initial matter, the merits of Plaintiff's claims are difficult to assess, as some of the allegations in the Complaint do not square with statements made by the Plaintiff at

2

oral argument held before this Court on December 11, 2009.
Specifically, although the Complaint appears to contain
allegations that relate to Comcast's Voice over Internet
Protocol ("VoIP")[1] service, Plaintiff conceded at oral argument
that it does not contemplate any causes of action or theories of
recovery, nor does it seek any damages, relating to VoIP
services.  (Dec. 11, 2009 Mot. Hr'g Tr. at 13:15-22; 14:3-6.)
As a result, the Court will analyze the issues presented in the
Motion to Dismiss by setting aside factual allegations regarding
VoIP.

> A.   <u>Factual Allegations</u>

The relevant allegations in the Complaint are as
follows.  Plaintiff, Dominion, is a company that generates,
transmits, and distributes electricity via a network of poles
located in the Commonwealth of Virginia.  (Compl. ¶ 1.)
Defendants, collectively referred to as "Comcast" in this
Opinion, are subsidiaries of Comcast Corporation, "the nation's
leading provider of cable, entertainment and communications

---

[1] The Court notes that the Code of Federal Regulations defines VoIP.  "An
interconnected Voice over Internet protocol (VoIP) service is a service that:
(1) Enables real-time, two-way voice communications;
(2) Requires a broadband connection from the user's location;
(3) Requires Internet protocol-compatible customer premises equipment (CPE);
and,
(4) Permits users generally to receive calls that originate on the public
switched telephone network and to terminate calls to the public switched
telephone network."  47 C.F.R. § 9.3.  As this Opinion does not address VoIP,
the Court does not need to adopt this definition.

products and services" with millions of customers nationwide.
(Compl. ¶¶ 2-6.)  Plaintiff alleges that, in Virginia, Comcast
offers "traditional telephone services such as interconnection
services, call origination and termination services,
interexchange services, dedicated private line and business
transport services, and so called "E-rate" services."
(Compl. ¶ 10.)

      Comcast has over 192,000 cable system attachments to
Dominion's electric distribution poles located in Virginia.
(Compl. ¶ 17.)  The parties' relationship regarding the pole
rental rates is governed by several pole attachment agreements.
From June 1, 1993 through August 1, 1997, Dominion and Comcast
executed seven pole attachment agreements ("Agreements").
(Compl. ¶ 16.)  Under six out of seven of the Agreements,
Comcast is allowed to attach "cables, wires, and associated
appliances" for purposes of providing "audio and video signal
distribution service" only.  (Compl. ¶ 18.)  Each agreement
"covers one audio-visual signal distribution system."
(Compl. ¶ 18.)  The only agreement that contemplates
telecommunication services is the August 1, 1997 agreement.
(Compl. ¶ 18.)  A separate July 15, 2003 Settlement Agreement
between Dominion and the Virginia Cable and Telecommunications
Association, "applies to Comcast" and "sets forth a separate

4

rate for telecommunications service attachments" which is "substantially higher than the cable attachment rate." (Compl. ¶ 19.)  The terms of these agreements do not form part of the Complaint.

### B.  Claims for Relief

Plaintiff claims that Comcast has been unlawfully using its attachments on Dominion's electric distribution poles to deliver non-VoIP "telecommunications services" without proper notification and payment to Dominion.  (Compl. ¶¶ 24, 27.) Plaintiff claims that Comcast "materially breached the Agreements" by using its "network of more than 192,000 attachments" to provide "interexchange and local interconnection transport services throughout Virginia."  (Compl. ¶ 27, incorporating ¶¶ 22-23.)  Plaintiff does not attempt to distinguish which of the 192,000 attachments provide traditional phone services.  (Compl. ¶ 27.)  Nevertheless, Plaintiff alleges that Comcast must compensate Dominion at "the rate prescribed by 47 U.S.C. § 224(e) . . . for all of the more than 192,000 attachments."  (Compl. ¶¶ 32-33).  Dominion also asserts state law claims of breach of contract, trespass, and unjust enrichment for Comcast's allegedly unauthorized uses of its pole attachments for "Telecom Service."  (Compl. ¶¶ 35-42.)

Plaintiff seeks compensatory damages, attorneys' fees and costs, and any other relief as the Court deems necessary and proper.

### C.  Procedural Background

Plaintiff filed the Complaint against Defendants in this Court on October 13, 2009.  (Dkt. 1.)  On November 2, 2009, Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) or moved to stay proceedings in the alternative.  (Dkt. 9.)  Plaintiff opposed the Motion on November 23, 2009 (Dkt. 17) and Defendants replied on December 4, 2009 (Dkt. 4).  This Court heard argument on this Motion on December 11, 2009.  Defendant's Motion to Dismiss is before the Court.

## II.  Standard of Review

The district court may dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous."  *Bell v. Hood*, 327 U.S. 678, 682 (1946).  To survive a Rule 12(b)(1) motion to dismiss, Plaintiff bears the burden of proving that the court has subject-matter jurisdiction over his claims.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  The district court should grant

the Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*   When presented with a Rule 12(b)(1) motion, district courts are permitted to consider materials outside the pleadings.   *Suter v. United States*, 441 F.3d 306, 309, n.2 (4th Cir. 2006).

### III. Analysis

Plaintiff's federal claims, Counts One and Three, are brought under 47 U.S.C. § 201 *et seq.* - primarily for alleged "violations" the Pole Attachment Act (the "PAA"), 47 U.S.C. § 224 and accompanying regulations.   At the heart of the dispute between the parties is Plaintiff's claim that Comcast is providing "telecommunications services" to its subscribers while failing to properly notify Plaintiff and only paying Plaintiff a pole attachment rental rate for "cable services" rather than a higher rate applicable to telecommunications services. Defendants argue that such a dispute is a matter of contract, and that these statutes and regulations do not give rise to a private right of action that would give this Court subject-matter jurisdiction to hear the case.[2]   Defendants argue in the alternative that this Court should stay the case, pending a

---

[2] Jurisdiction is alleged solely through 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  (Compl. ¶ 8.)

ruling by the FCC on several related matters.  As this Court
finds that Plaintiff does not sufficiently allege a federal
private right of action it will not reach the issues raised in
Defendants' Motion to Stay.

A.   Statutory Background

Congress enacted the Pole Attachment Act in 1978 in an
effort to restrict the "anticompetitive practices by utilities
in connection with cable television service," particularly with
regard to leasing agreements to secure space on utility poles.
*F.C.C. v. Fla. Power Corp.,* 480 U.S. 245, 247 (1987).  The PAA
granted the Federal Communications Commission ("FCC") authority
to "regulate the rates, terms, and conditions for pole
attachments" and to "ensure that a utility charges just,
reasonable, and nondiscriminatory rates for such pole
attachments."  47 U.S.C. § 224.  A 1996 Amendment to the Act
directed the FCC to "prescribe regulations in accordance with
this subsection to govern the charges for pole attachments used
by telecommunications carriers to provide telecommunications
services" (§ 224(e)(1)) separate from the rate for "cable
service" (§ 224(d)).  The PAA also directed the FCC to "adopt
procedures necessary and appropriate to hear and resolve
complaints concerning such rates, terms and conditions."  47
U.S.C. § 224.  The FCC subsequently enacted detailed regulations

for "determining a maximum just and reasonable rate" [w]hen parties "fail to resolve a dispute regarding charges for pole attachments and the Commission's complaint procedures under Section 1.1404 are invoked."  47 C.F.R. § 1.1409(e); See 47 C.F.R. § 1.1409(e)(1) (cable) and § 1.1409(e)(2) (telecommunications).

> B.   <u>Private Right of Action</u>

Plaintiff assert federal question jurisdiction for Counts One and Three and supplemental jurisdiction for the accompanying state law claims arising out of the same operative facts.  Defendants challenge Plaintiff's assertion of jurisdiction.  Count I of the Complaint is premised on "violation[s] of 47 U.S.C. § 206 and 47 C.F.R. § 1.1403(e)" alleging that "cable operators must notify pole owners upon offering telecommunications services" (citing 47 C.F.R. § 1.1403(e)) and that Comcast failed to notify Plaintiff of its non-VoIP telecommunications services - giving rise to a private right of action.  (Compl. ¶¶ 20-25.)  Count III is premised on "violation[s] of 47 U.S.C. §§ 206 and 224(e)."  Plaintiff alleges that Comcast is a "telecommunications carrier," and that, as a "telecommunications carrier," Comcast failed to pay the telecommunications rate "prescribed by § 224(e)" for pole attachments.  (Compl. ¶ 33.)  Defendants, in their Motion to

Dismiss, argue that the statutes cited in the Complaint do not provide Plaintiff with a federal private cause of action conferring subject matter jurisdiction. This Court will evaluate these statutes in turn.

### 1. The Pole Attachment Act, 47 U.S.C. § 224

The Pole Attachment Act is the primary statute governing pole attachments. As described above, its purpose is to restrict "anticompetitive practices by utilities in connection with cable television service". *F.C.C. v. Fla. Power Corp.,* 480 U.S. 245, 247 (1987). There is only one case cited by either party where a district court was asked to determine whether Congress intended a private right of action to exist under the Pole Attachment Act, *Kansas City Power & Light Co. v. American Fiber Systems, Inc.* (No. 03-2330, 2003 WL 22757927 (D. Kan. Nov. 5, 2003)). While Plaintiff now concedes that §224 does not, in and of itself, confer a private right of action, (Pl.'s Opp. 5, n.5) the *Kansas City Power* Court's analysis is nevertheless informative. [3]

In making its determination in *Kansas City Power*, the court properly examined the statutory history of the Pole Attachment Act and found that the plain language of § 224 does

---

[3] Opp. at 5 n. 5 ("Dominion Virginia Power concedes that in and of itself Section 224 provides no private right of action.")

not create a private right of action.  After its initial
passage, Congress amended the PAA in 1982, 1984, and 1994, and
no private right of action provision was added.  See *Kansas City
Power & Light Co.*, 2003 WL 22757927.  In 1996, Congress made a
significant expansion of the PAA to also cover
"telecommunications carriers," but again did not add a provision
specifying a private cause of action.  47 U.S.C. § 224.  As the
court in *Kansas City Power* stated, "when Congress wishes to
provide a private remedy, it knows how to do so."  *Kansas City
Power*, 2003 WL 22757927 *3, *citing Touche Ross & Co.* v.
R*edington*, 442 U.S. 560, 572 (1978).  There, as here, the Court
"is reluctant to imply a cause of action without evidence of
congressional intent" and will not create an implied private
cause of action under § 224 alone.  *Id.*

      2.  Claims Arising Out of 47 U.S.C. §§ 206-207

      Plaintiff is thus left to establish a federal private
cause of action through 47 U.S.C. §§ 206 and 207, which provide
for liability and recovery of damages against common carriers.
47 U.S.C. §§ 206-207.[4]  Section 207 allows "any person claiming

---

[4] Under the Federal Communications Act, "'common carriers' are entities that
must provide [transmission] service[s] to the public without discrimination
and are heavily regulated by the FCC." *Pinney v. Nokia, Inc.*, 402 F.3d 430,
450 (4th Cir. 2005)(citing *In re Application of the United States for an
Order Authorizing the Roving Interception of Oral Communications,* 349 F.3d
1132, 1137 n. 9 (9th Cir. 2003) (citations omitted)); *see also* 47 U.S.C. §
153(10).

to be damaged by any common carrier. . .[to] bring suit" against that carrier "in any district court of the United States" for "recovery of damages for which such common carrier may be liable under the provisions of this chapter."  47 U.S.C. § 207. Section 206 says that a common carrier is "*liable*" for "*damages sustained in consequence*" of the carrier's doing "*any act, matter, or thing in this chapter* prohibited or *declared to be unlawful.*"  47 U.S.C. § 206 (emphasis added).  Plaintiff can successfully establish subject matter jurisdiction only if it shows that Defendants' actions under 47 C.F.R. § 1.1403(e) for Count I and 47 U.S.C. § 224(e) for Count II give rise to a federal private right of action under §§ 206-207.  The Court will address each alleged violation in turn.

i. *Count I: Violation of 47 C.F.R. § 1.1403(e)*

Plaintiff alleges that "Comcast [failed] to notify Dominion Virginia Power when it began providing each and every telecommunications service" and that such notification was required by 47 C.F.R. § 1.1403(e).  (Compl. ¶ 24.)  Section 1.1403(e) states in its entirety: "(e) Cable operators must notify pole owners upon offering telecommunications services." 47. C.F.R. § 1.1403(e).  It was enacted as part of the FCC's "Pole Attachment Complaint Procedures" under the authority of the PAA, for the purpose of providing administrative "complaint

and enforcement procedures to ensure that telecommunications carriers and cable system operators have nondiscriminatory access to utility poles . . . ." [5]  47 C.F.R. § 1.1401.  In enacting this regulation the FCC was cognizant of the "need for the pole owner to be notified" and required "the cable operator to provide notice to the pole owner when it begins providing telecommunication services." *Telecom Implementation of Section 703(e) of the Telecommunications Act of 1996, Amendment of the Commission's Rules and Policies Governing Pole Attachments*, Report and Order, 13 FCC Rcd. 6777, 6796, ¶ 35 (1998) (hereinafter "*Telecom Order*"), *rev'd*, *Gulf Power Co. v. FCC*, 208 F.3d 1263 (11th Cir. 2000), *rev'd*, *NCTA v. Gulf Power Co.*, 34 U.S. 327, 338-39 (2002).[6]  The FCC in recognizing this need found that "if a dispute arises, the *Commission's complaint process* can be invoked." *Telecom Order* ¶ 35 (emphasis added)(in enacting this regulation the FCC rejected an industry proposal that would have required affirmative monitoring of cable operators' services by the FCC).  The plain language of the

---

[5] See 43 Fed. Reg. 36086 (August 15, 1978):
"ACTION: Adoption of pole attachment rules.
SUMMARY: On May 9, 1978 the Commission released a notice of proposed rulemaking in response to section 224(b)(2) of the Communications Act Amendments of 1978, by which the Commission is required to promulgate rules to carry out the regulation of cable television pole attachments. The First Report and Order below sets forth an initial set of rules that establish procedures for resolving cable pole attachment complaints."
[6] These reversals were on other grounds. See *Gulf Power Co. v. FCC*, 208 F.3d 1263 (11th Cir. 2000), *rev'd*, *NCTA v. Gulf Power Co.*, 34 U.S. 327, 338-39 (2002).

regulation does not discuss a right of action, and the Telecom
Order demonstrates the FCC's intent that the regulations form
part of the administrative complaint proceedings not create a
cause of action.  Furthermore, the language of a regulation "may
not create a right that Congress [through statutory text] has
not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  Here
the Regulation in question was promulgated under the 1996
Amendment to the PAA.  *Telecom Order* 13 FCC Rcd. at 6796,
(1998).  The PAA, as discussed above and conceded by Plaintiff,
does not create a private right of Action.  The FCC's
implementing regulations cannot provide a private right of
action that Congress did not expressly or impliedly create
through legislative action.  *Alexander*, 532 U.S. at 291.

Plaintiff nevertheless argue that failure to notify
under 47 C.F.R. § 1.1403 gives rise to a private right of action
under 47 U.S.C. § 206.  In support of this argument, Plaintiff
points to *Global Crossing Telecommunications, Inc. v.
Metrophones Telecommunications, Inc.*, where the Supreme Court
upheld the FCC's determination that a carrier's failure to pay
compensation required by a FCC regulation constituted an "unjust
or reasonable" practice and thus a private right of action arose
under 47 U.S.C. § 201(b).  550 U.S. 45, 55 (2007)(holding that
"the FCC's application of § 201(b) to the carrier's refusal to

14

pay compensation is a reasonable interpretation of the statute, hence it is lawful)(citing *Chevron U.S.A. Inc.* Natural Resources Defense Council, 467 US 837, 843-844). *Global Crossing* is clearly distinguishable from the case at bar.

In *Global Crossing*, the FCC regulation at issue, 47 CFR § 64.1300(d), dictated that carriers reimburse payphone operators at a specified rate of, at the time, $0.24 a call unless the parties could agree on a separate amount. *Id.* at 52. There, Plaintiff brought an action under 47 U.S.C. Section 201(b), which declares "unlawful" any common carrier "charge, practice, classification or regulation *that is unjust or unreasonable.*" 47 U.S.C. § 201(b)(emphasis added). The FCC expressly "determined that a carrier's refusal to pay the compensation ordered [by § 64.1300] amount[ed] to an 'unreasonable practice' within the terms of § 201(b)." *Global Crossing*, 550 U.S. at 52; See *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 18 F.C.C.R. 19975 (2003) (hereinafter "*2003 Payphone Order*")(wherein the FCC found that "failure to pay in accordance with the Commission's payphone rules . . . constitutes both a violation of section 276 and an unjust and unreasonable practice in violation of section 201(b) of the Act.") As the Court found, "to violate a regulation that

15

lawfully implements § 201(b)'s requirements is to violate the statute." *Global Crossing*, 550 U.S. at 54.

Here the situation is quite different.  First, in *Global Crossing* the Plaintiff alleged that the Defendant's failure to comply with the regulation constituted a violation of § 201(b) therefore a right of action existed under § 206-207. Here, Plaintiff does not sue for a violation of § 201(b).  The only statute mentioned alongside §§ 206-207, is § 224 which does not give rise to a private right of action.  Second, The issue in *Global Crossing* was "whether the particular FCC regulation before [the Court] lawfully implements § 201(b)'s 'unreasonable practice' prohibition."  550 U.S. at 55.  There the FCC had issued the "2003 Payphone Order" expressly stating that it viewed the violation of the Regulation at issue to be an "unreasonable practice." See *Id*; 18 F.C.C.R. 19975.  Court's specifically found the "FCC's § 201(b) 'unreasonable practice' determination" was a "lawful one."  550 U.S. at 55.  Here, Plaintiff has not alleged that Comcast's conduct violates § 201(b) and has not pointed to a comparable FCC order finding that failure to notify under 47 CFR § 1.1403 constituted an "unreasonable practice."  Third, the regulation at issue here, 47 C.F.R. § 1.1403(e), is part of the "FCC Pole Attachment Complaint Procedures" enacted under the authority of the Pole

16

Attachment Act, 47 USC § 224.  The FCC intended that "if a dispute arises" between the parties regarding a cable operator's notification "the *Commission's complaint process* can be invoked."  *Telecom Order* ¶ 35 (emphasis added).  These procedures have not been invoked.

As the FCC regulations indicate that the Commission's complaint procedures govern disputes regarding the notification procedures surrounding the provision of telecommunications services, and Plaintiff has failed to provide any case law or FCC finding where a private cause of action arose out of 47 C.F.R. § 1.1403(e), this Court finds that Plaintiff has failed to demonstrate that a private right of action against Comcast arises under 47 U.S.C. § 206 and 47 C.F.R. § 1.1403(e).

## ii. *Count III:* 47 U.S.C. § 224

As discussed in Section III.A above, the PAA itself does not give rise to any private cause of action.  As alleged by Plaintiff, in conjunction with §§ 206-207 the PAA goes no farther.  Section 206 permits recovery against a common carrier that does a "thing in this chapter prohibited or declared to be unlawful" or that "this chapter required to be done."  47 U.S.C. § 206.  Plaintiff's alleges that "Comcast failed to pay *the section 224(e)* rate for all of the more than 192,000 attachments it has to Dominion Virginia Power's poles."

17

(Compl. ¶ 33)(emphasis added).  The statute itself, however, does not dictate a particular rate that must be paid by the attaching party.  See 47 U.S.C. § 224(e).  Rather, as Plaintiff stated during oral argument, "section 224 . . . required the FCC to issue regulations that would govern the [pole attachment] charges."[7]  Hr.'g Tr. December 11, 2009 at 10."  Specifically, the PAA directs the FCC to promulgate regulations that will govern the private agreements regarding pole attachments for "telecommunications services" and that will protect against the "anticompetitive practices by utilities in connection with cable television service," particularly with regard to leasing agreements between the parties to secure space on utility poles. *Fla. Power Corp.*, 480 U.S. at 247 (1987).  The FCC, in promulgating those regulations, found that "the [PAA], legislative policy, administrative authority, and current industry practices all make private negotiation the preferred means by which pole attachment arrangements are agreed upon between a utility pole owner and an attaching entity."  *Telecom Order* ¶ 10.  On the facts as alleged in the Complaint, there are

---

[7] The relevant section reads: "The Commission shall, no later than 2 years after February 8, 1996, prescribe regulations in accordance with this subsection to *govern the charges for pole attachments used by telecommunications carriers to provide telecommunications services, when the parties fail to resolve a dispute over such charges. Such regulations shall ensure that a utility charges just, reasonable, and nondiscriminatory rates for pole attachments.*" 47 U.S.C.A. § 224(e)(1)(emphasis added).

two contracts that address the agreed to rate for Pole
Attachments.  (See Compl. ¶¶ 18-19.)  If either party disputed
the rates it could have not entered into the agreements or
turned to the FCC complaint procedures for relief.

Section 224(e) specifically provides that the
regulations promulgated will apply "when the parties fail to
resolve a dispute over such charges." *Telecom Order* ¶ 10
(citing 47 U.S.C. § 224(e)).  When that happens, the FCC will
"compare the utility's *proposed* rate to a maximum rate
calculated using the statutory formula." *Telecom*, ¶ 10
(emphasis added).  The differing rates provided by the
regulations are used by the FCC in administering the complaint
procedures, to determine the maximum "just and reasonable" rate
that a utility is allowed to charge.  47 CFR § 1.1409 (stating
"when parties fail to resolve a dispute regarding charges for
pole attachments and the Commission's complaint procedures under
Section 1.1404 are invoked, the Commission will apply the
following formulas for *determining a maximum just and reasonable
rate*."(emphasis added).)

Here, there is no "proposed rate" in dispute.
Plaintiff alleges that "Comcast *must* pay the rate prescribed by
47 U.S.C. § 224(e)" and that "Comcast has *failed to pay* the
section 224(e) rate," (Compl. ¶¶ 32-33), but the "224(e) rate"

19

is a tool used by the FCC in mediating negotiations on contractual disputes, not a statutory requirement that overrides agreed to contractual terms.

In the instant case, there is neither a dispute between the parties regarding what rate should be charged for cable attachments and what rate to be charged for telecommunications attachments, nor, to this Court's knowledge, were the Pole Attachment Act Complaint procedures invoked.  The July 2003 Settlement Agreement requires that Comcast pay a separate rate for telecommunications service attachments, which are substantially more expensive than the cable service attachments.  (Compl. ¶ 19.)  It is the agreement that appears to govern here.  Comparison with the "statutory formula" created at the direction of § 224(e)(1) is not necessary.  If Plaintiff is correct, and Comcast is not paying the agreed to "telecommunications rate," that could constitute a breach of that Settlement Agreement, but not a violation of § 224(e).[8]  As Plaintiff conceded at oral argument "in section 224, there's no specific provision that the defendants have violated."  (Hr.'g Tr. December 11, 2009 at 10.)  Plaintiff argues that "section 224 . . . required the FCC to issue regulations that would

---

[8] As the terms of the relevant agreements are not before it, the Court does not rule on the validity of these claims.

govern the charges," (Hr.'g Tr. December 11, 2009 at 10),
however, these regulations do not establish a private right of
action for failure to comply with contractual terms, but instead
provide a tool to be used during complaint procedures.  47 CFR §
1.1409

For the reasons discussed above, Dominion has failed
to demonstrate that it has a private cause of action arising
under the PAA or 47 C.F.R. § 1.1403, either alone, or in
conjunction with 47 U.S.C. §§ 206-207.  Therefore, this Court
does not have subject-matter jurisdiction under 28 U.S.C. § 1331
to hear Counts I and Counts III of the Complaint.

C.  Supplemental Claims

Plaintiff also brings three state law claims: Breach
of Contract (Count Two); Trespass (Count Four); and Implied
Contract and Unjust Enrichment (Count Five).  Plaintiff asserts
jurisdiction for these claims based supplemental jurisdiction
under 28 U.S.C. § 1367.  (Compl. ¶ 8.)  The doctrine of
supplemental jurisdiction states that federal courts have
discretion to retain or dismiss non-federal claims when the
federal basis for an action is no longer applicable.  *See* 28
U.S.C. § 1367 (codifying *United Mine Workers of America v.
Gibbs*, 383 U.S. 715 (1966)).  A district court has discretion to
dismiss a case where the court "has dismissed all claims over

21

which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).
In the Fourth Circuit, "trial courts enjoy wide latitude in
determining whether or not to retain jurisdiction over state
claims when all federal claims have been extinguished."
*Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir. 1995). Courts
take a number of factors into consideration in making this
discretionary determination: "convenience and fairness to the
parties, the existence of any underlying issues of federal
policy, comity, and considerations of judicial economy." *Id.*
(citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350
n. 7 (1998)).

As the *Shanaghan* court states, "the doctrine of
supplemental jurisdiction is a doctrine of flexibility, designed
to allow courts to deal with cases involving pendent claims in
the manner that most sensibly accommodates a range of concerns
and values." *Shanaghan,* 58 F.3d at 110 (citations omitted).
Here, the Court has found that federal question jurisdiction
does not exist for any of the claims asserted. Based on the
facts asserted in the Compliant, it appears the underlying issue
here is a dispute regarding the pole attachments rates due under
a August 1, 1997 Agreement between the parties and the July 2003
Settlement agreement between Dominion Virginia Power and the
Virginia Cable and Telecommunications Association. The

Complaint does not provide specific allegations regarding terms

of the relevant agreements, payments made by defendant or the

formulas used to calculate the required payments.  Given the

conflicting nature of the allegations and statements made at

oral argument; the nature of the state law claims at issue, the

thin factual allegations regarding state law claims, and in the

interests of comity and considerations of judicial economy, this

Court will decline jurisdiction over the remaining claims.

### IV.  Conclusion

        For the foregoing reasons, the Court will grant

Defendant's Motion to Dismiss under Rule 12(b)(1).  An

appropriate Order will issue.


                              _____/s/_____
March 8, 2010                      James C. Cacheris
Alexandria, Virginia       UNITED STATES DISTRICT COURT JUDGE